RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 3/15/06

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| Janet Vanbuskirk | Civil Action No. 6:05-CV-1752 |
| versus | Judge Tucker L. Melançon |
| Citigroup, Inc. | Magistrate Judge Methvin |

## MEMORANDUM RULING

Before the Court is Defendants Citigroup, Inc. and CitiFinancial Consumer Services, Inc.'s (Citi) Motion to Compel Arbitration, to Stay Court Proceedings, and to Dismiss Class Action Claims [Rec. Doc. 10], Plaintiff Janet Vanbuskirk's Opposition [Rec. Doc. 19], Defendants' Reply [Rec. Doc. 21], and Plaintiff's Supplemental Opposition thereto [Rec. Doc. 23]. Also before the Court is Plaintiff's Motion to Certify as a Class Action [Rec. Doc. 3] and Defendants' Opposition [Rec. Doc. 13]. For the following reasons, Defendants' Motion to Compel Arbitration will be granted, Defendants' Motion to Stay the Proceedings will be denied as moot and Plaintiff's Motion to Certify as a Class Action will be denied as moot.

1

## I. Background.

On April 22, 2004, Janet Vanbuskirk entered into a loan transaction with CitiFinancial Consumer Services, Inc., evidenced by a Disclosure Statement, Note, and Security Agreement. (*Defendants' Motion, Exhibit A*). Additionally, Plaintiff executed an Arbitration Agreement on the same day. (*Defendants' Motion, Exhibit B*).

In June 2005, Defendants mailed a letter to Vanbuskirk alerting her that her personal account and payment history information had been lost while in the possession of a third-party courier service.[1] (*Plaintiff's Opposition, Exhibit A*, p. 1). This information included Plaintiff's name, Social Security number, address, and other confidential information. (*Id*). Citi further notified Plaintiff of her enhanced risk of identity theft due to the compromise and offered to provide ninety day credit monitoring free of charge. (*Id*). Additionally, Defendants guaranteed Vanbuskirk that in the future all confidential information would be sent via direct encrypted electronic transmission. (*Id*).

---

[1] Apparently, Citi and other lending institutions routinely transport sensitive information to credit bureaus to maintain updated credit histories of borrowers. (*Plaintiff's Opposition, Exhibit A*, p. 1).

On October 4, 2005, Plaintiff filed her Complaint against Defendants alleging breach of contract, violations of LA. R.S. 6:333 and 9:3571, negligence, and breach of fiduciary duty, stating that her claims arose from Defendants' alleged "failure to maintain adequate security of its customers' personal account information and payment history information as well as transporting such information without appropriate security safeguards." (*Complaint*, ¶ 1).

*II. Law and Analysis.*

*A. Application of the Federal Arbitration Act.*

An arbitration clause is subject to the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.*, if the arbitration clause is part of a valid written contract "evidencing a transaction involving commerce." *Del E. Webb Construction v. Richardson Hospital Authority*, 823 F.2d 145, 147 (5th Cir. 1987) (citing 9 U.S.C. § 2). The Arbitration Agreement in dispute was incorporated into and made a part of a loan contract, with "funding [to] come in whole or in part from sources outside this state, which will involve commerce within the meaning of the United States Arbitration Act, 9 U.S.C. § 1, *et seq.*, as amended." (*Defendants' Motion, Exhibit B*, p. 2). The Arbitration

3

Agreement further provided that "any claim, except those specified below in this Agreement, shall be resolved by binding arbitration in accordance with the Federal Arbitration Act." (*Id.* p. 1). As such, the Court finds that the loan agreement executed by the parties is governed by the FAA.

*B. Motion to Compel Arbitration.*

In adjudicating a Motion to Compel Arbitration, the Court generally conducts a two-step inquiry. See *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). First, the Court must determine whether the parties agreed to arbitrate the dispute in question. *Id.* This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute falls within the scope of that arbitration agreement. *Id.* When deciding whether the parties agreed to arbitrate the dispute in question, "courts generally . . . should apply state-law principles that govern formation of contracts." *Id.* In applying state law however, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Id.* The second step is to determine "whether legal constraints

4

external to the parties' agreement foreclosed the arbitration of those claims." *Id.*

*1. Validity and Procedural Unconscionability.*

With regard to the first part of the first prong, the validity of the Agreement, Plaintiff argues that the Arbitration Agreement and the Class Action Waiver are unconscionable. Specifically, Plaintiff avers that the Arbitration Agreement is procedurally unconscionable because she could not and did not mutually consent to the agreement because her actions were involuntary and were taken without proper knowledge.[2] (*Plaintiff's Opposition*, p. 16). Plaintiff points to the inequities in the borrower and lender's bargaining power, the cohesive nature of the offer, the borrower's inability to alter the contract once formed, and the inherent unfairness of arbitration to prove the involuntariness of her actions. The United States Supreme Court has held that generalized attacks on arbitration are meritless. See *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 89-90 (2000). Additionally, the Court is limited to reviewing only the arbitration clause itself for validity, not the peripheral

---

2

Under Louisiana law, valid contract formation requires: (1) capacity; (2) mutual consent; (3) a lawful object; and (4) a lawful cause. See LA. CIV. CODE ARTS. 1918, 1927, 1971, and 1966. Plaintiff's Opposition rests on the absence of mutual consent.

5

language of the surrounding contract. See *Iberia Credit Bureau, Inc. v. Cingular Wireless, LLC*, 379 F. 3d 159, 172 (5th Cir. 2004) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395(1967)). All other defenses and objections relative to the contract at large are properly raised before the arbitrator if the arbitration clause is held to be enforceable.[3] *Id.* Accordingly, the Court finds that none of Plaintiff's contentions of involuntariness relieve her from the terms of the Arbitration Agreement.

Further, Vanbuskirk avers that she lacked the knowledge necessary to consent to arbitration because she was deceived. Plaintiff states that although the terms and provisions of the Arbitration Agreement were included in the documents she signed, she was unaware of the meaning and function of the language since it was "buried in small inconspicuous print, using complex legalistic language in the middle of the arbitration agreement and within the Security Agreement itself." (*Plaintiff's Opposition*, p. 19). The Court finds Vanbuskirk's argument to be unpersuasive. Indeed, the documents in dispute were littered with language designed to notify the

---

[3] This is known as the "separability doctrine." *Iberia Credit Bureau, Inc.*, 379 F. 3d at 172.

borrower of the ramifications and severity of executing an arbitration agreement.[4]

The Louisiana Supreme Court has unambiguously held that "a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other

---

[4] For instance, in a box directly above the signature line on the last page, the Security Agreement stated, "ARBITRATION. Borrower, Non-obligor(s) (if any) and Lender have entered into a separate Arbitration Agreement on this date, the terms of which are incorporated and made a part of this Disclosure Statement, Note and Security Agreement by this reference." *(Defendants' Motion, Exhibit A, p. 3)*. In bold, block lettering, the top of the Arbitration Agreement provided:
ARBITRATION AGREEMENT. THIS ARBITRATION AGREEMENT PROVIDES THAT ALL DISPUTES BETWEEN BORROWER AND CERTAIN OTHER PERSONS ON THE ONE HAND AND LENDER AND CERTAIN OTHER PERSONS AND ENTITIES ON THE OTHER HAND, EXCEPT THOSE SPECIFIED BELOW, WILL BE RESOLVED BY MANDATORY, BINDING ARBITRATION. YOU THUS GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS (EXCEPT FOR MATTERS THAT ARE EXCLUDED FROM ARBITRATION AS SPECIFIED BELOW). YOUR RIGHTS WILL BE DETERMINED BY A NEUTRAL ARBITRATOR AND NOT A JUDGE OR JURY. YOU ARE ENTITLED TO A FAIR HEARING, BUT THE ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT." *(Defendant's Motion, Exhibit B, p. 1)*.
The Arbitration Agreement further provided:
You and We agree that either You or We have an absolute right to demand that any claim be submitted to an arbitrator in accordance with this Arbitration Agreement. If either You or We file a lawsuit, counterclaim, or other action in court, the other party has an absolute right to demand arbitration following the filing of such action." *(Defendant's Motion, Exhibit B, p. 1)*.
The last page of the Arbitration Agreement additionally stated:
SPECIAL ACKNOWLEDGMENTS. You understand and acknowledge by signing your name to this Agreement that a court and/or jury will not hear or decide any claim governed by this Agreement; ... discovery in an arbitration proceeding can be much more limited than in a court proceeding; and rights to appeal an arbitration award are very limited." *(Defendant's Motion, Exhibit B, p. 2)*.

party failed to explain it to him." *Aguillard v. Auction Mgmt.*, 908 So.2d 1, 22 (La. 2005). The record reflects that Janet Vanbuskirk signed or initialed and dated every page of the Security Agreement and the Arbitration Agreement. (*Defendants' Motion, Exhibits A & B*). After reviewing the documents at issue, the Court finds that a plain reading of the five pages comprising the Security and Arbitration Agreements would, in the least, alert a potential borrower of the effects and repercussions of executing a contract with arbitration provisions. Further, the record before the Court is devoid of any evidence that Defendant misrepresented, leaned on, nor deceived Plaintiff to get her to sign any of the agreements. Accordingly, the Security and Arbitration Agreements executed between CitiFinancial and Janet Vanbuskirk were not procedurally unconscionable and invalid.

### 2. *Validity and Substantive Unconscionability.*

Additionally, Plaintiff avers that the Arbitration Agreement and Class Action Waiver are substantively unconscionable, thus vitiating her mutual consent to the terms in question. Specifically, Plaintiff alleges that the terms of the Arbitration Agreement exempt actions and rights that are most relevant and useful to Defendants,

while eliminating integral procedural rights beneficial to the borrower.[5] (*Plaintiff's Opposition*, pp. 20-21). The Arbitration Agreement excludes two types of disputes from the arbitration arena: foreclosure actions and small claims actions valued under $15,000.[6] (*Defendants' Motion, Exhibit B*, p. 1). Vanbuskirk argues that by excluding the two action types most likely to benefit the lender, the contract effectively gives Defendants "carte blanche power" to litigate in court. (*Plaintiff's Opposition*, p. 21). Again, Plaintiff's understanding is misguided. The foreclosure exclusion provision is necessary since only judicial courts have the authority and jurisdiction, not arbitrators, to properly transfer title to property. Second, the small

---

[5] Included in these procedural rights, Plaintiff claims the Arbitration Agreement forced the borrower into waiving the right to: (1) appraisement; (2) demand and three days notice; (3) notice of seizure; (4) three days delay; and (5) other sweeping protections afforded under the Louisiana Code of Civil Procedure. (*Plaintiff's Opposition*, p. 21).

[6] The relevant foreclosure clause provides: "Any action to the extent necessary to obtain a judicial order for the purpose of (a) effecting a foreclosure or transferring title being foreclosed, or permitting exercise of extra-judicial or self-help repossession under applicable law, with respect to an interest in property, or (b) establishing, perfecting or clearing title, with respect to an interest in property." (*Defendants' Motion, Exhibit B*, p. 1).
The relevant small claims clause excludes "any claim where all parties collectively (including multiple named parties) seek monetary relief in the aggregate of $15,000 or less in total relief, including, but not limited to compensatory, statutory, and punitive damages, restitution, rescission, disgorgement, costs, and fees (including attorneys' fees); or any claim brought in and subject to the jurisdiction of a small claims court, so long as the matter remains in such court . . ." (*Defendants' Motion, Exhibit B*, p. 1).

claims exclusion provision does not benefit Citi over their borrowers, because the exemption applies equally to all parties to the loan.

Plaintiff further asserts that the Arbitration Agreement is substantively unconscionable because it unduly places prohibitive costs on the borrower and restricts the use of the class action in an attempt to strip away Plaintiff's enforcement rights. Specifically, Vanbuskirk contends that the terms of the Arbitration Agreement: (1) require the borrower to pay all costs if brought in bad-faith or without justification while not providing a reciprocal provision if the lender brings a claim in bad-faith or without justification; and (2) disallow the use of the class action apparatus to cumulate borrowers' injuries in the event of individual, minimal damage, "thus making the defendant virtually claim proof."[7] (*Plaintiff's Opposition*, p. 23). To invalidate an arbitration clause on the ground that it is prohibitively expensive, the

---

[7] The provision in question provides as follows: "The party making demand upon the Administrator for arbitration shall pay to the Administrator the filing fee required by the Rules when the demand is made, except that We will pay the amount of the filing fee in excess of the amount pf the fee that would be required for you to file a lawsuit in Your jurisdiction. In addition, We will pay to the Administrator all other administrative costs of the arbitration proceeding. However, the arbitrator may award Us, in accordance with Rules, the excess amount of any such filing fee and any other arbitration administrative costs We incur if the arbitrator determines that the Claim was made in bad faith or lacks justification on Your part." (*Defendants' Motion, Exhibit B*, p. 2).

mover bears the burden of proving the likelihood of incurring such costs by establishing more than a mere possibility the she may have to share in the payment of fees. See *Green Tree Financial Corp. -Alabama v. Randolph*, 531 U.S. 79, 92 (2000). Under the provisions of the Arbitration Agreement, the only finite costs Plaintiff will bear are the initial filing fees, capped at the comparable filing fee amount for a lawsuit filed in her local jurisdiction. Vanbuskirk could be held liable for the entire cost of arbitration if an arbitrator determined that her claim was brought in bad-faith or without justification, but the mere possibility of excessive fees is not sufficient to otherwise invalidate the Arbitration Agreement. Accordingly, the Court finds that Plaintiff has not made a showing that she will be liable for an unreasonable portion of the arbitration and administrative costs.

As to Plaintiff's averment that any provision waiving the right to pursue a class action is unconscionable, the Court notes *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, which held that arbitration agreements that precluded class actions were enforceable. 379 F.3d 159, 174 (5th Cir. 2004) (relying on the Supreme Court's holding in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 31 (1991), that "certain

litigation devices may not be available in an arbitration as part and parcel of arbitration's ability to offer 'simplicity, informality, and expedition'"). Accordingly, the Court finds that the Arbitration Agreement executed between the parties is not substantively unconscionable, and is otherwise valid and enforceable.

*3. Scope of the Arbitration Clause.*

As to the second part of the first prong, the Court must next determine whether the instant litigation falls within the scope of the Arbitration Agreement. In her Complaint, Vanbuskirk alleges breach of contract, violations of LA. R.S. 6:333 and 9:3571, negligence, and breach of fiduciary duty, all arising from guarantees and protections found within the Privacy Promise portion of the Security Agreement. Under the terms of the Arbitration Agreement, a claim is defined to include:

> Any case controversy, tort, disagreement, lawsuit, or claim now or hereafter ... [including] anything related to: The Note, this Agreement, or the enforceability or the arbitrability of any Claim pursuant to this Agreement including but not limited to the scope of this Agreement and any defenses to enforcement of the Note or this Agreement; ... Any documents or instruments that contain information about any Credit Transaction, insurance, service, or product; Any act or omission by any of Us; ... Any federal or state statute or regulation, or any alleged violation thereof; ... Any party's execution of this Agreement and/or willingness to be bound by its terms and provisions; or Any dispute about closing, servicing, collecting, or enforcing a Credit Transaction."
> *(Defendants' Motion, Exhibit B, p. 1).*

The sweeping language of the Arbitration Agreement, coupled with the Fifth Circuit's preference for broad interpretation of arbitration provisions, lead the Court to find that the plaintiff's instant suit falls within the scope of the Arbitration Agreement executed between the parties.[8]

### 4. Exterior Legal Constraints.

The second prong of the *Webb* analysis focuses on whether exterior legal constraints prohibit the enforcement of arbitration clauses. In her Opposition, Plaintiff expounds that the Class Action Fairness Act, 28 U.S.C. § 1711 (CAFA), *et seq.*, confers upon the federal courts exclusive jurisdiction over class action litigation. Because of this, Plaintiff alleges, class action litigation that would otherwise fall under the FAA must instead be brought in federal court. Vanbuskirk avers that the conflict between the two statutes shows that "Congress clearly evidenced the intent to exclude arbitration from class actions." (*Plaintiff's Opposition*, p. 6).

"Courts consider three factors in determining whether Congress intended to

---

[8] In other cases, the Fifth Circuit has broadly applied arbitration agreements to encompass "all disputes between the parties having a significant relationship to the contract." *Pennzoil Exploration & Prod. Co. v Ramco Energy, Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998); see also *Hornbeck Offshore Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 755 (5th Cir. 1993).

preclude application of the FAA to a particular statutory right: (1) the statute's text; (2) its legislative history; and (3) whether there is 'an inherent conflict between arbitration and the statute's underlying purposes.'" *Walton v. Rose Mobile Homes, LLC*, 298 F.3d 470, 473-74 (5th Cir. 2002) (citation omitted). Vanbuskirk fails to identify any specific, express statutory provision or reference to the legislative history of the CAFA in proving Congress' intent to limit the applicability of the FAA. Plaintiff does however allege that the CAFA and the FAA are inherently in conflict because arbitration frustrates the CAFA's purposes of fostering judicial efficiency, protecting the rights of individuals by ensuring fair access to the court system, promoting confidence on the judicial system, and allowing the fair and consistent resolution of claims. (*Plaintiff's Opposition*, pp. 6-9). The mover bears the burden of proving contrary Congressional intent. See *Mitsubishi Motors Corp. v. Soler Chrystler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). "Every case the Supreme Court has considered involving a statutory right that does not explicitly preclude arbitration, it has upheld the application of the FAA." *Walton*, 298 F.3d at 474 (including conflicts cases falling under the ADEA, the Sherman Act, the RICO Act, Securities

Act of 1933, Securities Exchange Act of 1934, and the Truth in Lending Act). The Court finds that Plaintiff has failed to carry her burden in proving that Congress intended for the CAFA to limit the reach of the FAA. "Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Id* at 473. Accordingly, there are no legal constraints that foreclose the application of the Arbitration Agreement executed between the parties.

For the reasons stated, the Court finds that the parties agreed to settle any and all disputes arising out of the borrower-lender relationship through arbitration. Further, the Court finds that the parties entered into a valid, binding agreement which included provisions mandating arbitration.

### III. Conclusion

Accordingly, Defendants' Motion to Compel Arbitration will be granted and Defendants' Motion to Stay the Proceedings will be denied as moot. Further, the Court will order the Clerk of this Court to administratively terminate this matter, pending arbitration. The parties are to notify the Court within ten (10) days of the

date of the arbitration decision being rendered and the prevailing party is to submit a proposed Judgment to Confirm the Arbitration Award within thirty (30) days thereafter. The Court will deny Plaintiff's Motion to Certify as a Class Action as moot.